UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>PIERRE GREENE,<br><br>Defendant. | **ORDER**<br><br>19 Cr. 738 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

Defendant Greene is charged with conspiracy to distribute and possess with intent to distribute 500 grams and more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Indictment (Dkt. No. 8) Count One); using, carrying, and possessing a firearm during and in relation to the drug trafficking crime charged in Count One, in violation of 18 U.S.C. §§ 942(c)(1)(a)(i), (c)(2) (id. Count Two); and conspiracy to traffic in firearms, in violation of 18 U.S.C. § 922(a)(1)(A) (id. Count Three).

Greene was arrested and presented before Magistrate Judge Robert W. Lehrburger on September 27, 2019. (See Dkt. No. 7) He was ordered detained on grounds of danger to the community. (Id.) Greene now seeks release on bail.[1] (Mar. 22, 2020 Def. Ltr. (Dkt. No. 21)) The Government opposes his request. (Mar. 25, 2020 Govt. Ltr. (Dkt. No. 25)) Trial is currently scheduled for May 11, 2020. (Jan. 2, 2020 Order (Dkt. No. 15))

I. **LEGAL STANDARDS**

The Bail Reform Act, 18 U.S.C. § 3142(g) directs that the Court consider the following factors in determining whether pretrial release is appropriate:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime

---

[1] Greene has consented to having his bail application decided on the papers, and has waived his right to a hearing. See Dkt. No. 30.

1

> of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the [defendant];
>
> (3) the history and characteristics of the [defendant], including . . . the [defendant's] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; . . . and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release . . . .

18 U.S.C. § 3142(g).

In order for a defendant to be detained pending trial, the Government must demonstrate (1) by a preponderance of the evidence, that there is no condition or combination of conditions that will ensure the defendant's return to court, or (2) by clear and convincing evidence, that there is no condition or combination of conditions that will reasonably assure the safety of the community.

## II. THE PARTIES' ARGUMENTS

### A. Defendant Greene

Greene argues that he should be released because (1) the Metropolitan Correction Center ("MCC"), where he is housed, "presents tremendous health risks to those who operate the facility and the inmates who are housed there," given the coronavirus pandemic; (2) "the MCC has repeatedly proven that it is unable to protect the health and safety of the individuals in its custody"; (3) he "is neither a risk of flight nor a danger to the community"; and (4) he is at particular risk from COVID-19, because he "is overweight and has never been incarcerated before." (Mar. 22, 2020 Def. Ltr. (Dkt. No. 21) at 3, 5, 7)

With respect to risk of flight, Greene contends that "[t]he entire New York area is under a lockdown," and accordingly "there is nowhere for Mr. Greene to go, and he presents no risk of flight." (Id. at 7) Further, he "has no motive to flee [because] [h]e already has served a significant piece of time at the MCC and he is pleading guilty to an agreement that drops the most serious charges down to a (b)(1)(B) charge." (Id.) With respect to danger to the community, Greene states that he "has no criminal history and no history of violence"; "is deeply incentivized not to violate any terms of release"; and "will be on home confinement in the current environment of a City-wide lockdown." (Id.)

Greene proposes a bail package consisting of (1) a personal recognizance bond in an unspecified amount, co-signed by three financially responsible people; and (2) home confinement at some unspecified location. (Id. at 2)

### B.     **The Government**

The Government opposes Greene's application for release on bail, arguing that (1) the conditions at the MCC do not warrant his release; and (2) Greene poses a danger to the community and a serious risk of flight. (Mar. 25, 2020 Govt. Ltr. (Dkt. No. 25) at 5-8)

The Government argues that the charged offenses are "serious" and that Greene's "conduct is harmful and dangerous," noting that he "directed the storage of the methamphetamines – which were shaped and looked like candy – to be in close proximity to [his] three year old son." (Id. at 7) The Government further argues that the "evidence [against Greene] is overwhelming" and that he "face[s] significant criminal exposure . . . [which] provides a strong incentive not to appear." (Id.) The Government also notes that Greene has (1) a 2011 conviction for "willful obstruction of law enforcement officers"; and (2) a 2011 conviction for furnishing alcohol to a minor, an offense for which Greene's parole later was

3

revoked. (Id. at 8) As to the danger to Greene posed by the coronavirus pandemic, the Government notes that "the BOP and MCC have in place a plan to address all potential health issues," and that Greene is not at high risk of severe illness from contracting the virus. (Id. at 5)

## III. BAIL REFORM ACT ANALYSIS

### A. Nature of the Offenses Charged

Defendant Greene is charged with (1) conspiracy to distribute and possess with intent to distribute 500 grams and more of methamphetamine; (2) using, carrying, and possessing a firearm during and in relation to that drug conspiracy; and (3) conspiracy to traffic in firearms. (Indictment (Dkt. No. 8), Counts One, Two, Three)

According to the Complaint, on February 26, 2019. Greene's co-defendant Joshua Olivo sold methamphetamine pills to an undercover officer.[2] During that transaction – which was recorded – Olivo described Greene as his "brother" and stated that he "travels to Georgia to obtain narcotics and occasionally, firearms." (Cmplt. (Dkt. No. 1) at 3-4) The undercover gave Olivo $320 as a "down payment on a firearm." (Id. at 4) Olivo later told the undercover that Greene would be travelling to Georgia for Mother's Day and would bring back a firearm. (Id. at 5)

On May 14, 2019, Olivo provided the undercover with 500 methamphetamine pills and two handguns. Greene drove Olivo to the sale. (Id.)

On July 17, 2019, Olivo met with the undercover officer, said that he would retrieve pills from his "brother's girlfriend's apartment," and then entered the building where Greene's girlfriend – co-defendant Magaly Robledo – resides. (Id.)

---

[2] Olivo and Greene marketed the methamphetamine they sold as ecstasy. (Mar. 25, 2020 Gov't Ltr. (Dkt. No. 25) at 1)

On July 24, 2019, Olivo told the undercover that his "brother" would be returning to Georgia to acquire drugs and firearms. (Id. at 6)

While selling methamphetamine pills to the undercover officer on August 16, 2019, Olivo stated that his "brother's" name was "Pierre"; he also provided the undercover with Greene's telephone number. (Id.) Greene later exchanged text messages with the undercover officer in which he indicated that he "expected to have additional firearms to sell by around September 13, 2019." (Id. at 6-7)

Greene, Olivo, and Robledo were arrested on September 27, 2019. That same day, the Government executed a search warrant at Robledo's residence. Officers recovered more than a kilogram of methamphetamine in a safe kept in Robledo's bedroom. (Mar. 25, 2020 Govt. Ltr. (Dkt. No. 25) at 2)

In opposing Greene's bail request, the Government describes him as the "leader" of the conspiracy, and notes that he "directed the mother of his son, and co-defendant, Robledo to maintain the methamphetamine stash in her home," where their son lived. (Mar. 25, 2020 Govt. Ltr. (Dkt. No. 25) at 1) Greene also "directed Robledo to dole out the methamphetamine pills to Olivo," who was "the conspiracy's primary narcotics and firearm distributor." (Id.) The Government says that Greene "typically relied on others to handle the bulk of criminal activities while he directed actions from behind the scenes." (Id. at 3)

Greene is charged with three offenses involving large-scale narcotics trafficking, the use of firearms in connection with narcotics trafficking, and trafficking in firearms. He faces a mandatory minimum sentence of ten years' imprisonment on the drug charge, and a mandatory

consecutive sentence of five years' imprisonment on the Section 924(c) charge.[3]  Because of the drug conspiracy and Section 924(c) charges, there is a presumption under 18 U.S.C. § 3142(e)(3)[4] that no condition or combination of conditions will ensure Greene's return to court and the safety of the community.

    B.    <u>**Weight of the Evidence**</u>

As to the weight of the evidence, it is quite strong.  The Government has the 500 methamphetamine pills and two handguns that the undercover purchased on May 14, 2019 transaction, as well as over a kilogram of methamphetamine recovered from Robledo's residence on the day of Greene's arrest.  (Id. at 2)  The Government also has video recordings of twenty sales of methamphetamine Olivo made to the undercover.  (Id. at 1)  The Government also has text message exchanges between Greene and the undercover in which Greene offered to sell handguns to the undercover.  And there is surveillance evidence demonstrating that Greene drove Olivo to the May 14, 2019 transaction.  (Id. at 2)  In text messages found on Greene's cellphones, he directs Robledo to store drugs in her apartment, inventory them, and distribute them to Olivo.  (Id. at 3)

---

[3]  The parties have engaged in plea discussions, and Greene has accepted the Government's offer of a (b)(1)(B) drug count, and a stipulated Guidelines range of 135 to 168 months' imprisonment. (Apr. 4, 2020 Def. Ltr. (Dkt. No. 30))  Greene's plea to this count – which has not yet been taken – would subject him to a five year mandatory minimum sentence.

[4]  18 U.S.C. § 3142(e)(3): "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed –
    (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . ;
    (B) an offense under section 924(c) . . . of this title . . . ."

### C. Personal History and Characteristics of the Defendant

Greene is 28 years old and was born in Manhattan. As an adolescent and young adult, Greene lived in Georgia. He returned to New York City in 2012. Greene has had a full-time job as a sales associate in a Harlem wine store since September 2012. He is single, but has a young son in Manhattan. His brother is co-defendant Joshua Olivo; he also has a sister who lives in Georgia. Greene's mother resides in Rockville, Maryland, and his father is deceased. (PTS Rpt.; Mar. 22, 2020 Def. Ltr. (Dkt. No. 21) at 2)

As to criminal record, Greene has 2011 misdemeanor convictions for "willful obstruction of law enforcement officers" and criminal trespass, and a 2011 misdemeanor conviction for furnishing alcohol to a minor. Greene's pretrial services report indicates that his probationary sentence for the latter crime was revoked in May 2012. (PTS Rpt.)

### D. Risk of Flight and Danger to the Community

Given Greene's steady employment and residence in New York City since 2012, the Court concludes that the Government has not demonstrated by a preponderance of the evidence that there is no condition or combination of conditions that can ensure the Defendant's return to court.

As to danger to the community, the Government must establish by "clear and convincing evidence" that there is no condition or combination of conditions that will ensure the safety of the community if the Defendant is released. That standard is met here, and Greene has not rebutted the presumption that detention is appropriate. See 18 U.S.C. § 3142(e)(3)(A).

There is overwhelming and unchallenged evidence that Greene was involved in the large-scale distribution of methamphetamine, and in the sale of firearms. That evidence includes undercover buys of both methamphetamine and handguns, a seizure of more than a

kilogram of methamphetamine from the home Greene shared with his girlfriend, Greene's incriminating text messages with an undercover officer, video recordings in which he is mentioned, and a surveillance report placing him at the scene of a drug and firearms sale. Given that Greene was using his girlfriend's home as his stash house, and employing his brother to sell drugs, there is little reason to believe that home confinement or family suasion can ensure the safety of the community

Greene contends that the COVID-19 pandemic and the conditions at the MCC justify his release. But Greene is not elderly, nor does he have any reported underlying health conditions that would put him at a higher risk of contracting COVID-19. Acknowledging the risk that the virus presents in an incarceratory setting, that risk does not – at this time – outweigh the danger that Greene presents to the community.

## **CONCLUSION**

The Government has met its burden of demonstrating that there is no condition or combination of conditions that can ensure the safety of the community if Greene is released on bail. Accordingly, he will remain detained pending trial or plea. The Court is cognizant of the risk to inmates presented by the current COVID-19 crisis, however. See Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, No. 19-1778, slip op. at 26-27 (2d Cir. Mar. 20, 2020). Accordingly, Greene's application for pretrial release is denied without prejudice to

renewal in the event circumstances materially change.

Dated: New York, New York
April 5, 2020

SO ORDERED.

Paul G. Gardephe
United States District Judge